35 So.2d 178

**JORDAN v. KNIGHT.**
4 Div. 486.

Supreme Court of Alabama.
Jan. 19, 1948.

L. A. Farmer, of Dothan, for appellant.

J. Hubert Farmer, of Dothan, for appellee.

FOSTER, Justice.

This is a suit in several counts, some for damages for the breach of a contract, and some for money had and received.

The claim is that defendant breached a contract to make plaintiff's bail bond in criminal cases as he agreed, for which he was paid $75.00. That as a consequence he was kept in jail some thirty-seven days, and he also claims a refund of the $75.00. The trial court gave the affirmative charge on the written request for defendant. From the judgment accordingly, plaintiff appeals.

The evidence shows without conflict that on May 25, 1945, plaintiff was arrested and put in jail on three warrants charging forgery, and his bond was fixed at $500.00 in each case. He requested defendant to make his bond as surety. After some negotiations, defendant agreed to do so for a consideration of $50.00 cash and $25.00 deferred. Defendant signed three bonds with some other sureties, and they were approved, and plaintiff released. Those bonds were conditioned to appear before the county court judge on June 4, 1945, and until discharged by law.

The grand jury indicted plaintiff, and his bond was fixed at $400.00 in each case. Defendant was again consulted, and he agreed to sign them also upon the agreement of another person, Hawkins, to pay

the balance due of $25.00, sign the bonds himself, and give plaintiff a job. The bonds were signed on August 6, 1945, and plaintiff was at liberty. He had not been incarcerated after the indictments. On August 10, 1945, plaintiff was arrested on a warrant charging vagrancy, sworn out by his wife, and he was put in jail. While in jail, defendant obtained a certified copy of the bonds he had signed on August 6, 1945, and turned them into the sheriff's office in surrender of plaintiff on account of his liability on such bonds. Plaintiff was then already in jail.

Then, on August 22, 1945, while plaintiff was in jail on the vagrancy charge, there were negotiations and agreement between plaintiff and defendant and one Mr. Cook, whereby it was agreed that Mr. Cook would, and did, pay defendant the $25.00 balance due for the other bonds, and would join defendant in making new bonds on the forgery charges, and Cook would make the bond on the vagrancy charge; and plaintiff was to move to Cook's place, and do farm work. That agreement was carried out, and those bonds made, and plaintiff went to work for Cook August 22, 1945. The trial was set for December 13, 1945, and plaintiff and Cook were present in court. But the cases were continued, and plaintiff had moved to Dothan, where he had lived before going to Cook's farm. Cook thereupon procured certified copies of those bonds and arrested plaintiff on that day, and turned him over to the sheriff. He remained in jail until January 9, 1946, when he made bonds at a cost to him of $120.00. It was shown that the customary charge for making such bonds was ten per cent. of the amount of the penalty. They at that time aggregated $1200.00, originally $1500.00. Defendant took no part in having him arrested December 13, 1945, and did not authorize it. Defendant at that time refused to sign new bonds.

Plaintiff testified that in negotiating with defendant to execute the bonds at first for which he was to receive $75.00, defendant said in response to plaintiff's inquiry, that he would "stay right on it" and not give him "any trouble about coming off the bond at all," referring to the bonds. Defendant denied this, and introduced a memorandum signed at the time by plaintiff and his wife reciting, among other things: "Paid cash $50.00. Will pay balance before date of next grand jury: Pays to next grand jury only." With details as to his personal condition and prospects; and this clause: "If I get into any further trouble, and put in jail, you may come off my bond, and we forfeit all right to any money paid or *owe* you."

Plaintiff and wife admitted signing the paper, but denied that this last clause was in it or agreed to by them, and denied that defendant only bound himself until the grand jury met. Defendant asserted to the contrary. Other important details are without conflict insofar as they concern the matter of the affirmative charge. As a part of the original condition, it was not directly agreed to execute any bonds except those then at hand. They were conditioned to answer to the county court before indictment. Defendant executed others after the indictment without additional consideration, but obtaining security for the balance due him. Plaintiff was again put in jail on his wife's complaint. True, that did not relieve him from the obligation of the bonds he had made. State v. Crosby, 114 Ala. 11, 22 So. 110. But in that status, he could obtain the benefit of section 209, Title 15, Code. State v. Crosby, supra; Ingram v. State, 27 Ala. 17; Bearden v. State, 89 Ala. 21, 7 So. 755.

Had he not done so, his obligation on the bonds would not have been discharged by the arrest of plaintiff and upon plaintiff making bond and obtaining release on the last charge, the former bond would remain in effect insofar as the former charge was concerned. State v. Crosby, supra; 8 Corpus Juris Secundum, Bail, § 77, note 15. And as between defendant and plaintiff, the surety's surrender of the principal will not release him from his agreement, if he made any such, to remain bound as bail within the contemplation of the contract. And for an unwarranted breach of his contract, he is subject to a suit. As between defendant and the State, defendant had the right under section 209, Title 15, Code,

to surrender the plaintiff. But as between defendant and plaintiff, the question as to whether, in doing so, he breached his contract depends upon whether the contract authorized such surrender, or if not whether plaintiff's subsequent conduct was such as justified him in doing so. 8 Corpus Juris Secumdum, Bail, § 87, note 29; Karakey v. Nollohan, Tex.Civ.App., 15 S. W.2d 692.

Without the statute, section 209 supra, and at common law, it was the right of the bail at any time to arrest and surrender the principal into the custody of the law in discharge of their obligation to the State under the bond. And at common law, the principal in giving bail was relieved from the custody of the law, but he was regarded not as at liberty entirely, but as transferred to the friendly custody of his bail (Cain v. State, 55 Ala. 170), and the sureties became in law the jailers of their principal. State v. Crosby, 114 Ala. 11, 22 So. 110. Unless there is an agreement to the contrary, as between the principal and surety, the surety could exercise his lawful power to surrender the principal to the custody of the law. If there is such agreement, there would be implied, if not otherwise expressed, the duty of the principal so to conduct himself as not to cause reasonable apprehension on the part of the surety as to whether the principal will answer the charge as required by law, and not violate his duty to the sureties to be subject to their control.

It cannot be said that plaintiff sustained any damage on account of defendant surrendering him on August 11, 1945, while he was already in jail, for defendant signed a new bond as soon as plaintiff was ready to be released on the vagrancy charge, and that without additional consideration. Defendant had nothing to do with the surrender of plaintiff on December 13, 1945, by Cook, and breached no duty there. The question is whether he breached a duty in then refusing to sign new bonds.

We cannot find any help from the authorities upon the question of what conduct of the principal, and circumstances later occurring, justify one in refusing to carry out his contract to continue to be bail for one charged with crime.

Plaintiff's evidence was that defendant "will stay on it," and not give him "any trouble about coming off the bond at all." It would be difficult to interpret that as requiring defendant to sign any and every bond that becomes necessary until he is discharged of the crime, and that without regard to the subsequent conduct of plaintiff. He was to and did sign a bond good until discharged by law. After that an indictment was returned, and plaintiff was required to execute a new bond, which superseded the old one. Defendant made that bond, and still another after the vagrancy charge. But he was under no obligation after the indictment, and after plaintiff was incarcerated on the vagrancy charge, to continue to execute bonds indefinitely, required by no fault of his.

In passing on the affirmative charge, we must of course treat plaintiff's version of the transaction as true. But, even so, we think the court was correct in holding that on that basis defendant was warranted in not signing a new bond on or after December 13, 1945. There was no other conduct of defendant, which could be said upon any of the evidence to have been a breach of his contract which was injurious to plaintiff.

Affirmed.

GARDNER, C. J., and LAWSON and STAKELY, JJ., concur.